IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

```
IN RE                           )
                                )
SYED SAMAR RAZA,                )    06-30239-H3-11
                                )
        Debtor                  )
                                )
```

MEMORANDUM OPINION

The court heard the Emergency Motion of International House of Pancakes, Inc., IHOP Restaurants, Inc. and IHOP Properties, Inc., For Relief From The Automatic Stay to Prevent Improper Operation (Docket No. 6).  After considering the Debtor's Answer in Opposition (Docket No. 20), the pleadings, evidence, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law, and will enter a separate Judgment lifting the stay to allow Movants to proceed with any and all rights they may have under state law.  To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such.  To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

Findings of Fact

1.  On January 23, 2006, Syed Samar Raza ("Debtor"), filed a voluntary bankruptcy petition under Chapter 11 (Docket No. 1).

2. Shortly prior to filing bankruptcy, on January 9, 2006, Debtor obtained an ex parte temporary restraining order in Cause No. E-176292, 172nd Judicial District Court, Jefferson County, Texas against International House of Pancakes, Inc., IHOP Restaurants, Inc. and IHOP Properties, Inc. ("IHOP") prohibiting IHOP from enforcing its rights regarding two franchised IHOP restaurants and the premises upon which they are located in Beaumont, Texas. Debtor's Exhibit No. 9. An injunction hearing was held on the Debtor's temporary restraining order in state court on January 20, 2006. The State Court orally dissolved the temporary restraining order and ordered the parties to attend a court ordered mediation that was scheduled for January 25, 2006.

3. IHOP requests that this court lift the automatic stay to allow it to proceed with any and all rights it might have against the Debtor. IHOP contends that Debtor has no interest in the real properties upon which the restaurants are operating nor does Debtor have any interest in the franchise agreements relative to these properties. As such, IHOP alleges that the properties and/or agreements are not necessary to an effective reorganization. IHOP also alleges Debtor can not provide adequate protection and that the bankruptcy proceeding was filed in bad faith by abusing the bankruptcy process to avoid an unfavorable state court decision.

4. IHOP grants franchise licenses for the use of IHOP trademarks and trade secrets in connection with the operation of

IHOP restaurants.  IHOP granted to Khalid Sharaf ("Sharaf") franchises for two IHOP restaurants in Beaumont, Texas on February 2, 2000 pursuant to two Franchise Agreements, referred to as IHOP #1372 and IHOP #1900.  The franchise documents include a Franchise Agreement, a Sublease, and an Equipment Lease.  These documents contain provisions prohibiting a Franchisee from entering into an assignment or sale of the Franchise Agreement or Sublease, and prohibiting a Franchisee from pledging or giving any third party a security interest in the Franchise Agreement or Equipment Lease, without the express written consent of IHOP.  IHOP Exhibit Nos. 3-5, 9-11.

     5.   Debtor testified that he has managed both restaurants since 2002.  On February 4, 2002, Sharaf and Debtor executed an Earnest Money Contract whereby Sharaf sold the assets of IHOP #1372 to Debtor.  IHOP Exhibit No. 1.  On or about April 16, 2002, Debtor submitted a franchise application to IHOP along with a Financial Statement as of December 21, 2001.  IHOP Exhibit Nos. 22 and 23. Neither the application nor the Financial Statement included a reference to the Earnest Money Contract.  The application reflected that Debtor was employed by Mailroom Westchase.

     6.   On June 18, 2002, Sharaf and Debtor executed a Bill of Sale and a Sale Purchase Agreement whereby Sharaf sold the franchise interest, leasehold interests pursuant to the Building Lease and Equipment Lease, and all assets of IHOP #1900 to Debtor.

IHOP Exhibit Nos. 13, 14.  Around this same time, June 2002, Debtor attended interviews with IHOP in connection with his application to obtain an IHOP franchise.  IHOP conducted another interview with Debtor on or about August 19, 2002 regarding the transfer of IHOP #1372.  IHOP Exhibit Nos. 18 and 19.

7. Sometime in June 2002, Debtor obtained a loan from Comerica Bank and pledged the Equipment in IHOP #1372 and IHOP #1900.  A UCC Financing Statement on Secured Transactions was filed on June 25, 2002 with the Texas Secretary of State.  IHOP Exhibit No. 15.  Over three years later, on December 5, 2005, Hibernia National Bank (apparently as successor to Comercia Bank) filed a Financing Statement terminating the security agreement.  Debtor's Exhibit No. 7.

8. Thereafter, on December 6, 2003, Debtor filed a second application with IHOP for a franchise which reflected that Debtor was employed by IHOP as a manager.  Debtor also submitted a Financial Statement as of December 31, 2002 which document does not refer to the sale of IHOP #1900 or the pledge of the equipment located at IHOP #1372.  IHOP Exhibit Nos. 24 and 25.  Debtor attended interviews with IHOP in December 2003, January 2004, and April 2004 in connection with his second application relating to the transfer of IHOP #1372.  Testimony of Debtor, IHOP Exhibit No. 20.

9. On a letter dated April 6, 2005 from IHOP's Franchise Coordinator to Debtor, Debtor was referred to as a "prospective franchisee" and reference was made to information enclosed that concerned various aspects of IHOP's franchise program. The letter also contained the caveat that Debtor not enter into any binding agreements relating to the proposed franchise, such as building agreements, equipment purchase agreements, leases, loans, or service contracts. Debtor Exhibit No. 3.

10. Keith King, the Asset General Counsel for IHOP, testified that IHOP only became aware in November 2005 of the sales agreements between Sharaf and Debtor and the pledge of equipment by Debtor to Comerica Bank. IHOP sent letters of termination, dated November 14, 2005 and November 28, 2005, to Sharaf relating to the franchises he held, IHOP #1372 and IHOP #1900, respectively. IHOP Exhibit Nos. 16 and 17. The franchises were terminated for violating the provisions of the Franchise Agreements, Subleases, and Equipment Leases, which prohibited the sale, assignment or pledge of these agreements or leases. IHOP Exhibit Nos. 16 and 17.

11. Debtor filed the instant bankruptcy proceeding only two days before the state court ordered mediation. This is essentially a two party dispute and the court notes that this dispute was in the process of being adjudicated before the state court when Debtor filed his bankruptcy petition. Debtor's original Summary of Schedules reflect assets in the amount of $2,158,250 and

liabilities in the amount of $1,061,500. Docket No. 14. The amended schedules reflect assets of $2,129,500 and liabilities in the amount of $720,500. Docket No. 29. Debtor lists only eight creditors, including secured and unsecured. The fact that Debtor's assets far exceed his liabilities is noteworthy and lends support to IHOP's allegation that the petition was filed in bad faith. However, the evidence presented was insufficient to establish that Debtor did in fact file his petition in bad faith.

      12. Debtor claims that he had an implied-in-fact contract for almost four years with IHOP in connection with his interests in the property and franchises. He claims that through their course of conduct, IHOP is estopped from alleging otherwise. Debtor contends that IHOP was aware of the fact that he ran the two locations. Debtor testified that he paid the personal property and liability insurance. Debtor's Exhibit Nos. 5 and 6. Further, a Business Plan Focus Areas' form includes the notation that the "[f]ranchisee [Sharaf] is 90% thru the process of a transfer to Syed Raza for #1372..." The form is undated.

      13. This court need not determine whether there is an implied-in-fact contract. The purpose of a stay hearing is not to litigate the merits of an underlying claim. *In re Mathis*, 64 B.R. 279 (N.D. Tex. 1986). The claims raised by Debtor are outside the scope of a hearing to determine whether to lift the automatic stay. These claims are more properly raised and determined through a

separate suit.

14.  Debtor can raise these issues in the currently pending state court suit.  The state court is competent to handle these types of disputes and was in the process of adjudicating this matter.  The state court ordered mediation between the parties.  Upon conclusion of the state court litigation all of the issues between the parties would be resolved.

## Conclusions of Law

1.  The term "cause" used in 11 U.S.C. § 362(d)(1) is not defined in the Code and whether cause exists must be determined on a case by case basis.  Allowing a matter to proceed in another forum may constitute cause.  *In re Murray Industries, Inc.*, 121 B.R. 635 (Bankr. M.D. Fla. 1990).

2.  The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case.  *In re Atlantic Ambulance Associate, Inc.*, 166 B.R. 613 (Bankr. E.D.Va. 1994).

3.  In determining whether to lift the automatic stay to allow litigation against a debtor to proceed in another forum, bankruptcy courts have considered the following factors: 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves Debtor as a fiduciary; 4) whether a specialized tribunal has been established

to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.  *See  In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984); *Sonnax Industries, Inc.*, 907 F.2d 1280 (2nd Cir. 1990); *In re United States Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994; *In re Fowler*, 259 B.R. 856 (Bankr. E.D. Tex. 2001).

       4.   Not all factors may be relevant to each case. Further, the decision to lift the stay may be upheld on judicial economy grounds alone. *See In re United States Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994), citing *In re Kemble*, 776 F.2d 802, 907 (9th Cir. 1985).  In light of the lack of privity of contract between Debtor and IHOP, and the pendency of the state court proceedings addressing this essentially two party dispute, the court finds sufficient cause to lift the stay.

      Based on the foregoing, the court will enter a separate Judgment lifting the stay to allow the parties to proceed with Cause

No. E-176292, 172nd Judicial District Court, Jefferson County, Texas.

SIGNED at Houston, Texas on this 5th day of April, 2006.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE